**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 25-1469

GENEVA ENTERPRISES, LLC; AV AUTOMOTIVE, LLC,

Plaintiffs – Appellees,

v.

AARON CHAVEZ; ALEX GUEVARA; ANA FLORES; ANTHONY CIPRIANO; ANTONIO RIVERA; BRUCE WILSON; CARLOS ROMERO; CHELSEA MONTES; CHRISTIAN ISOPESCU; DOGAN GUNESSEVER; EDWARD MARTIN; ERODITA GUEVARA; EUN SHIN; HECTOR OROZCO; HUGO CAJINA; JAMES OSBORN; JEFFREY SHADE; KAI REED; MICHAEL KENTES; MICHAEL HOOK; PATRICK WHITE; PAUL LYONS; ROBERT DORMAN; ROBERTO HUACCHA; ROY BRAXTON; ROY HIPPERT, JR.; SEAN MCLAIN; THOMAS GRANT; TOMMY TRAN; WILLIAM SMITH; WILLIAM BONILLA,

Defendants – Appellants.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:24-cv-00704-CMH-WBP)

Argued:  February 25, 2026                    Decided:  April 10, 2026

Before DIAZ, Chief Judge, and KING and THACKER, Circuit Judges.

Dismissed by published opinion.  Judge King wrote the opinion, in which Chief Judge Diaz and Judge Thacker joined.

**ARGUED:**  Robert Wesley Thayer Tucci, ZIPIN, AMSTER & GREENBERG, LLC, Silver Spring, Maryland, for Appellants.  Leslie Paul Machado, O'HAGAN MEYER PLLC, Alexandria, Virginia, for Appellees.  **ON BRIEF:**  Thomas J. Eiler, ZIPIN, AMSTER & GREENBERG, LLC, Silver Spring, Maryland, for Appellants.  Michael E. Barnsback, O'HAGAN MEYER PLLC, Alexandria, Virginia, for Appellees.

KING, Circuit Judge:

In this interlocutory appeal from the Eastern District of Virginia, 31 former employees (the "former employees") of Geneva Enterprises, LLC and AV Automotive, LLC (collectively "Geneva"), challenge the district court's March 27, 2025 Order, which the former employees maintain denied their "Combined Motion to Lift Stay and Renewed Motion to Compel Arbitration." *See Geneva Enters., LLC v. Chavez*, No. 1:24-cv-00704 (E.D. Va. Mar. 27, 2025), ECF No. 26 (the "March 2025 Order"). Relevant here, the March 2025 Order rejected the former employees' request for relief (i.e., entry of an order compelling arbitration and ordering Geneva to pay arbitration initiation fees), on grounds that "*this case has already been referred to arbitration and the case stayed*" by the court's prior Order of June 2024. *Id.* at 1 (emphasis added). And by its June 2024 Order, the court denied Geneva's request to "enjoin the arbitration initiated by" the former employees, and otherwise granted the former employees' request to impose a stay of "this action . . . pending resolution of the parties' claims in arbitration." *See Geneva Enters., LLC v. Chavez*, No. 1:24-cv-00704, at 1 (E.D. Va. June 7, 2024), ECF No. 17 (the "June 2024 Order"). As explained herein, we dismiss this appeal for lack of appellate jurisdiction.

I.

The proceedings giving rise to this appeal are — to put it simply — rather convoluted. As background, the former employees initiated a "mass arbitration" against Geneva in February 2024, before the American Arbitration Association (the "AAA").

3

They alleged therein wage-related claims under the Virginia Wage Payment Act, and —
for one claimant, Mr. Guevara — a claim under the Fair Labor Standards Act. For its part,
Geneva maintains that four of the former employees had not signed agreements to arbitrate
with Geneva, and that all of the former employees failed to comply with conditions
precedent to arbitrating. On that basis, when the former employees commenced their
arbitrations, Geneva refused to pay arbitration initiation fees to the AAA.

In response, Geneva also commenced a civil action in March 2024 against the
former employees in the Circuit Court of Fairfax County, seeking an injunction against the
then-initiated arbitrations under Virginia law and the Federal Arbitration Act (the "FAA"),
along with a declaratory judgment regarding the scope of the arbitration agreements
invoked by the former employees. The former employees thereupon removed the Fairfax
County action to the Eastern District of Virginia in April 2024, invoking the district court's
subject-matter jurisdiction, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

Shortly after removing this case to federal court, the former employees also filed a
petition under § 4 of the FAA, seeking, inter alia, to compel arbitration and to stay the then-
removed federal court proceedings pending the arbitration before the AAA. For its part,
Geneva sought a federal court injunction of the arbitration itself. By its June 2024 Order,
the district court denied Geneva's request to "enjoin the arbitration initiated by" the former
employees, and for a preliminary injunction, and otherwise granted the former employees'
request to impose a stay of "this action . . . pending resolution of the parties' claims in
arbitration." *See* June 2024 Order 1. The court also declined to adjudicate the former

4

employees' motion to compel arbitration, explaining: "I've already said I'm going to dismiss the motion to stay arbitration and the motion for a preliminary injunction, so I can't see why I would compel it to go to arbitration something I have dismissed." *See* J.A. 1384.[1]

Consequently, the parties returned to the AAA for further proceedings. But upon returning to the AAA, Geneva continued to refuse payment of the arbitration initiation fees, and the former employees became dissatisfied with the AAA's approach to that issue. Specifically, the AAA had related in correspondence to the parties that, if Geneva was unwilling to pay the necessary fees to initiate the arbitrations, then the former employees could advance the fees and then seek recovery of the advance from an arbitrator.

Not willing to accept the AAA's proposal concerning the arbitration initiation fees, the former employees eventually returned to the district court in March 2025 to seek redress. That is, the former employees filed a motion — styled as a "Combined Motion to Lift Stay and Renewed Motion to Compel Arbitration," *see Geneva Enters., LLC v. Chavez*, No. 1:24-cv-00704 (E.D. Va. Mar. 3, 2025), ECF No. 18 (the "Renewed Motion") — seeking entry of an order directing, inter alia, Geneva to pay the necessary arbitration initiation fees to the AAA. By its March 2025 Order, the court denied the relief sought in the Renewed Motion, explaining that "*this case has already been referred to arbitration and the case stayed*" by the June 2024 Order. *See* March 2025 Order 1 (emphasis added).

---

[1] The citation herein to "J.A. __" refers to contents of the Joint Appendix filed by the parties in this appeal.

5

II.

On appeal, the former employees of Geneva challenge only the district court's March 2025 Order. Specifically, despite the court's earlier agreement with the former employees that this case belongs in arbitration and that a stay of the federal court proceedings is warranted pending the arbitration, the former employees maintain that they are nevertheless entitled to a court order directing Geneva to pay the arbitration initiation fees to the AAA. Geneva, on the other hand, resists that request as being legally improper under the FAA, and it maintains that the court lacked subject-matter jurisdiction — i.e., federal question jurisdiction — over this action, pursuant to 28 U.S.C. § 1331.

A.

Despite the parties' desire for us to reach the foregoing issues, a more fundamental — and ultimately threshold — issue has emerged in the posture of this interlocutory appeal: whether our Court possesses appellate jurisdiction under § 16 of the FAA? Although the parties' initial appellate briefs cursorily mentioned that issue, we have, as a court of appeals, an "independent obligation" to assure ourselves of appellate jurisdiction. *See, e.g.*, *Est. of Cunningham v. Mayor & City Council of Balt.*, 128 F.4th 238, 242 (4th Cir. 2025) (recognizing that "[w]e have an independent obligation to ensure that we possess appellate jurisdiction"); *B.P.J. v. W. Va. State Bd. of Ed.*, 98 F.4th 542, 552 (4th Cir.), *cert. denied sub nom.*, *W. Va. Secondary Sch. Activities Comm'n v. B. P. J.*, 145 S. Ct. 568 (2024).

In that regard, "[l]ike all federal courts, we are a court of *limited* subject matter jurisdiction." *See In re Search Warrants Issued Feb. 18, 2022*, 111 F.4th 316, 319 (4th

6

Cir. 2024) (emphasis added).   That is, "[w]e may only decide a case when both the Constitution and a federal statute permit it." *Id.* (citing *Wideman v. Innovative Fibers LLC*, 100 F.4th 490, 495 (4th Cir. 2024)).   Accordingly, we have a "special obligation to satisfy ourselves of our own [appellate] jurisdiction . . . even though the parties are prepared to concede it." *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citation modified); *Polk v. Montgomery Cnty., Md.*, 166 F.4th 400, 409 (4th Cir. 2026).

B.

Prior to the recent oral argument conducted at the College of Law in Morgantown, our Court requested and obtained supplemental briefs from the parties as to the following:

> Whether this Court has appellate jurisdiction under § 16 of the Federal Arbitration Act to review the district court's decision of March 27, 2025? *See, e.g.*, *In re Pisgah Contractors, Inc.*, 117 F.3d 133, 135 (4th Cir. 1997) (recognizing that while court of appeals has "jurisdiction to consider an appeal from an interlocutory order denying a motion to compel arbitration, we generally do not have jurisdiction over an interlocutory order compelling arbitration or directing arbitration to proceed" (citation modified)); 9 U.S.C. § 16(b)(2) (prohibiting interlocutory appeals of district court orders "directing arbitration to proceed").

*See Geneva Enters., LLC v. Chavez*, No. 25-1469 (4th Cir. Feb. 12, 2026), ECF No. 35.

In response to our request, the parties are — yet again — at sharp odds.  On the one hand, the former employees — who bear the burden of proving the existence of appellate jurisdiction, *see, e.g.*, *In re Search Warrants Issued Feb. 18, 2022*, 111 F.4th 316, 319 (4th Cir. 2024) — maintain that our jurisdiction in this interlocutory appeal is supplied by § 16(a) of the FAA.  According to the former employees, "because the order under review [i.e., the June 2025 order] is not an order 'directing arbitration to proceed' under FAA § 4,"

7

and is rather "an order denying [the Renewed Motion's] request for a § 4 directive that would make arbitration proceed," we possess jurisdiction over this interlocutory appeal pursuant to 9 U.S.C. § 16(a)(1)(B). *See* Supp. Br. of Appellants 1.

Meanwhile, Geneva maintains in its supplemental brief that appellate jurisdiction is lacking in this situation because § 16(b) of the FAA is clear that "an appeal may not be taken from an interlocutory order . . . granting a stay of any action" referred to arbitration, or otherwise "directing arbitration to proceed." *See* 9 U.S.C. § 16(b)(1)-(2). According to Geneva, the district court's March 2025 Order had already "maintained a previously-imposed stay" and was an "order [for] the parties to arbitrat[e]." *See* Supp. Br. of Appellees 4. Responding to the former employees' jurisdictional contention that the court denied their "renewed motion to compel arbitration," Geneva says that was because the court had, in effect, "already directed the parties to arbitration" in its June 2024 Order. *Id.*

## C.

### 1.

Against this backdrop, it is worth emphasizing that our appellate jurisdiction is generally limited to appeals from "final decisions of the district courts." *See* 28 U.S.C. § 1291. And ordinarily, a district court's decisions are not final until there is a judgment on the merits. *See, e.g.*, *United States v. Carrington*, 91 F.4th 252, 264 (4th Cir. 2024). This so-called "final judgment rule" is grounded in the principle that, "[t]o be effective, judicial administration must not be leaden-footed." *See Cobbledick v. United States*, 309 U.S. 323, 325 (1940). That is, if litigants could obtain immediate appellate review of every

8

"component element[] in a unified case," *id.*, a district court's work would be interrupted indefinitely, appellate dockets would be clogged, and the parties could harass each other with constant appeals, *see, e.g.*, *Flanagan v. United States*, 465 U.S. 259, 264 (1984).

In the proper circumstances, however, a court of appeals is entitled to assess an appeal in an "interlocutory" posture — i.e., before a "final decision" is rendered. As previously discussed, one such instance arises under § 16 of the FAA. Especially relevant in that regard, § 16(a)(1)(B) provides that "an appeal may be taken from . . . an order . . . *denying* a petition under section 4 of this title to order arbitration to proceed." *See* 9 U.S.C. § 16(a)(1)(B) (emphasis added). In other words, the FAA allows a court of appeals to consider and resolve an interlocutory appeal from a court order refusing to direct arbitration to proceed. Conversely, § 16(b) of the FAA specifies that "an [interlocutory] appeal may *not* be taken from an interlocutory order (1) granting a *stay of any action* . . . ; (2) *directing* arbitration to proceed . . . ; (3) *compelling* arbitration . . . ; or (4) refusing to enjoin an arbitration that is subject to this title." *See* 9 U.S.C. § 16(b)(1)-(4) (emphasis added).

## 2.

In light of the foregoing, we return to the heart of our jurisdictional analysis: do we possess appellate jurisdiction under § 16(a) of the FAA to review the district court's March 2025 Order, as the former employees maintain? Or rather, is this appeal impermissible under § 16(b), as Geneva says it is? Put succinctly, we agree with Geneva that we lack appellate jurisdiction. In our view, the district court's March 2025 Order — which clearly refused to lift the previously-imposed stay of the district court proceedings pending the

9

outcome of arbitration before the AAA — was, like the non-appealed June 2024 Order, an order "directing arbitration to proceed" before the AAA. *See In re Pisgah Contractors, Inc.*, 117 F.3d 133, 135 (4th Cir. 1997); 9 U.S.C. § 16(b)(2). And perhaps even more fundamentally, the March 2025 Order was unmistakably an order "granting a stay of [the] action" pending arbitration. *See* 9 U.S.C. § 16(b)(1). With respect to such an order, we plainly lack appellate jurisdiction, pursuant to 9 U.S.C. § 16(b)(1) and (2).[2]

Furthermore, we decline to bless an exercise of appellate jurisdiction in this situation merely because the March 2025 Order resulted in a denial of the Renewed Motion. On that score, although we "generally do not look beyond the caption of a denied motion when determining our jurisdiction under the FAA," *see Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 714 (4th Cir. 2015), we are nevertheless permitted to look past the caption of such a motion when we "suspect[] that the motion has been mis-captioned in an attempt to

---

[2] Our Court has recognized "two possible exceptions" to the general rule that we lack appellate jurisdiction over an interlocutory appeal from a district court order that, inter alia, directs arbitration to proceed. And those exceptions are "when the district court's order represents a final decision with respect to an arbitration," or "when 28 U.S.C. § 1292(b) provides the means for an interlocutory appeal[.]" *See In re Pisgah*, 117 F.3d at 136 (citation modified). Although the former employees now maintain — for the first time during the oral argument in Morgantown — that the first exception applies, we are not persuaded, given that the March 2025 Order does not fairly "represent[] a final decision with respect to arbitration." *Id.* An order to arbitrate, we have explained, is only "final when it results from a proceeding in which the sole issue before the district court is the arbitrability of the dispute." *See Humphrey v. Prudential Sec., Inc.*, 4 F.3d 313, 317 (4th Cir. 1993). In these circumstances, the March 2025 Order was not entered by the district court in an "independent" action, but rather was part of an "embedded" action, "in which the arbitration issue was one issue among others for the district court to resolve." *Id.*

take advantage of § 16(a)," *see Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 585 (4th Cir. 2012).  And that is what occurred here.

Indeed, the former employees captioned their Renewed Motion as a "Combined Motion to Lift Stay and Renewed Motion to Compel Arbitration."  *See* Renewed Motion 1.  But the Renewed Motion's text tells a much different story.  Therein, the former employees did not ask the district court solely to compel arbitration.  They also asked the court to order Geneva to pay the arbitration initiation fees to the AAA.  *Id.* at 1-2 (former employees requesting district court to "compel arbitration of the Parties' claims . . . as well as ordering [Geneva] to satisfy [its] outstanding Initiation Fees in the [AAA]").  Because the former employees sought far more relief than their narrowly-captioned Renewed Motion purports to seek — including relief not provided for by the FAA — they are "no longer proceeding exclusively under the FAA and have forfeited their right to interlocutory review under § 16(a)."  *See Wheeling Hosp., Inc.*, 683 F.3d at 585 (citation modified).

Furthermore, the former employees' insistence that their Renewed Motion was denied by the district court — and that the court thus refused to compel arbitration — is a misnomer.  A modest resort to the procedural history of this litigation reveals that the March 2025 Order denied the Renewed Motion because, as the court declared therein, "*this case has already been referred to arbitration and the case stayed*" by the June 2024 Order.  *See* March 2025 Order 1 (emphasis added).  Put differently, the March 2025 Order was an extension of the June 2024 Order, and it directed the parties to arbitrate before the AAA.  Over such an order, and in these circumstances, we necessarily lack appellate jurisdiction.

11

III.

Lastly, we turn to the issue of the district court's subject-matter jurisdiction over this removed action from the Circuit Court of Fairfax County. On that score, Geneva contends — in the posture of this improvidently-filed appeal over which we lack appellate jurisdiction — that the district court was also without subject-matter jurisdiction, pursuant to 28 U.S.C. § 1331. In the normal course, our Court could be obliged to assess the propriety of the district court's subject-matter jurisdiction. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (specifying that "[e]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it" (citation modified)); *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884); *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934). And "[i]f the record disclose[d] that the lower court was without jurisdiction," then we would "notice th[at] [jurisdictional] defect," possess "jurisdiction on appeal" despite the defect, and exercise jurisdiction over the case "merely for the purpose of correcting the error of the lower court in entertaining the suit." *See Di Biase v. SPX Corp.*, 872 F.3d 224, 232 (4th Cir. 2017) (citation modified).

Of great importance, however, the foregoing principle — i.e., that a court of appeals is obliged to assess and consider a district court's subject-matter jurisdiction, even if that issue was not raised in the underlying proceedings or by the parties — only applies if the court of appeals is first satisfied with its own appellate jurisdiction. *See, e.g.*, *Di Biase*,

12

872 F.3d at 232 (concluding that court of appeals possessed jurisdiction over interlocutory appeal under 28 U.S.C. § 1292(a)(1), and then addressing whether district court possessed subject-matter jurisdiction over pending action).  In other words, if the court of appeals is not satisfied with its own appellate jurisdiction — the situation here — then the court of appeals is not empowered to do anything except dismiss the improvidently-filed appeal, without reaching or assessing the district court's subject-matter jurisdiction.  *See, e.g.*, *In re Delaney*, 110 F.4th 565, 567 (2d Cir. 2024) (recognizing that, if court of appeals "lack[s] appellate jurisdiction," it "*must* dismiss the appeal" (emphasis added)).[3]

Such an outcome makes sense for multiple reasons.  For starters, as discussed above, our Court is one of "limited subject matter jurisdiction."  *See In re Search Warrants Issued Feb. 18, 2022*, 111 F.4th 316, 319 (4th Cir. 2024).  And because our jurisdiction is sharply circumscribed, as one of our sister circuits has recently explained, we are obliged — in every appeal — to satisfy ourselves of "our own appellate jurisdiction" before we can turn elsewhere.  *See Delaney*, 110 F.4th at 567 ("We turn first, as we must, to the issue of our own appellate jurisdiction").  Relatedly, if we were to assess the issue of the district court's subject-matter jurisdiction in the posture of an interlocutory appeal where appellate jurisdiction is lacking, we could open the floodgates to improper review of jurisdictional issues that are not immediately appealable.  Such a result — which we refrain from

---

[3] To be clear, as to the subject-matter jurisdiction of the district court under § 1331, that issue — as Geneva's lawyer acknowledged at the oral argument — is for the district court to address in the first instance.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

13

countenancing — would impermissibly "swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *See Al Shimari v. CACI Intern., Inc.*, 679 F.3d 205, 214 (4th Cir. 2012) (en banc) (citation modified).

## IV.

Pursuant to the foregoing, we are constrained to dismiss this appeal for lack of appellate jurisdiction.

*DISMISSED*